UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE SEREBRENNIKOV, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *     Civil Action No. 1:22-cv-12051-IT |
| | * |
| PROXET GROUP LLC and VLADIMIR | * |
| MEDVEDOVSKY, | * |
| | * |
| Defendants. | |

MEMORANDUM & ORDER

March 29, 2024

TALWANI, D.J.

Plaintiff George Serebrennikov's Amended Complaint [Doc. No. 28] alleges breach of

contract against Defendant Proxet Group LLC ("Proxet") (Count I); violations of the

Massachusetts Wage Act, M.G.L. c. 149, § 148 (the "Wage Act") against Proxet and Defendant

Vladimir Medvedovsky (Count II); and breach of the implied covenant of good faith and fair

dealing against Proxet (Count III).

In their Combined Partial Motion to Dismiss Plaintiff's Amended Complaint, and to

Strike [Doc. No. 31] (the "Motion"), Defendants argue that Counts II and III fail to state a claim

and are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). See Mem. ISO Mot.

to Dismiss 8–16 [Doc. No. 32].[1] Defendants also move to strike Paragraphs 7, 39, 41–42, 44–54,

56, and 59 of the Amended Complaint [Doc. No. 28], as well as the attached proposed

Termination Agreement [Doc. No. 28-3], arguing that these reflect compromise negotiations

between the parties disclosed in violation of Rule 408 of the Federal Rules of Evidence.

---

[1] Defendants do not challenge the breach of contract claim (Count I).

For the reasons set forth below, the Partial Motion to Dismiss [Doc. No. 28] is DENIED in part and GRANTED in part, and the Motion to Strike is DENIED.

## I.      Factual Background

The facts as alleged in the Amended Complaint [Doc. No. 28] are as follows. Plaintiff George Serebrennikov is a resident of Florida. Am. Compl. ¶ 1 [Doc. No. 28]. Defendant Proxet is a limited liability company organized under Massachusetts law, with its principal place of business in Massachusetts. Id. ¶ 2. Defendant Medvedovsky is a resident of Massachusetts and the founder, president, Chief Executive Officer, sole member, and sole manager of Proxet. Id. ¶¶ 3, 9.

Plaintiff began working for Proxet in August of 2016 as Proxet's Head of Delivery. Id. ¶ 10. In 2016, the parties executed two agreements: the Consulting Agreement [Doc. No. 28-1], and the Confidential Information and Invention Assignment Agreement [Doc. No. 28-2]. Id. ¶ 11. Plaintiff accrued vacation time since his first day of employment; Proxet documented Plaintiff's accrued vacation time internally and regularly compensated Plaintiff for unused vacation days. Id. ¶¶ 14, 21.

Subsequently, the parties verbally agreed to modify Plaintiff's compensation. Id. ¶ 12. The parties agreed that Plaintiff would be entitled to a non-discretionary bonus of $50,000 per year. Id. ¶ 13. From 2017 to 2020, Plaintiff received this $50,000 annual bonus. Id.

In 2021, Plaintiff also became the Chief Operating Officer of Proxet. Id. ¶ 15. That year, the parties verbally agreed to increase Plaintiff's bonus to a $100,000 non-discretionary bonus and to raise Plaintiff's salary. Id. ¶¶ 13, 30. Plaintiff received that $100,000 bonus in 2021. Id. In 2022, Plaintiff was paid an annual salary of $270,000, or $22,500 a month. Id. ¶ 32.

Throughout Plaintiff's time at Proxet, his duties remained mostly the same. Id. ¶ 16. Plaintiff managed approximately 250 workers in Ukraine, Poland, Latin America, and the United States. Id. His duties included hiring and firing employees, HR, marketing, project management, and dealings with customers. Id. ¶ 17. He spent most of his employment abroad—beginning in Ukraine, then in Turkey, and then in Poland. Id. ¶ 19. From 2016 to 2018, he was the only U.S.-based worker in the company aside from Medvedovsky. Id. ¶ 18. Plaintiff's duties were within the usual course of business of Proxet, he was compensated for vacation days, performed duties under the direction and control of the Defendants, was classified as an employee by Proxet's subsidiary, was subject to a worldwide restrictive covenant and an indefinite confidentiality clause, and was subject to a clause prohibiting him from recruiting Proxet workers until twelve months after the termination of his relationship with Proxet. See id. ¶¶ 17–28.

In March 2022, Plaintiff informed Defendants that he intended to resign. Id. ¶ 33. The parties verbally agreed that Plaintiff would postpone his resignation and work until August 31, 2022, at a monthly salary of $22,500 with a $100,000 non-discretionary bonus, so that Plaintiff could assist Defendants in training and transitioning Plaintiff's replacement. Id. ¶¶ 34–35, 62. At a virtual meeting in June 2022, Medvedovsky announced that Plaintiff would be leaving the company on August 31, 2022. Id. ¶ 36.

Plaintiff continued working following this announcement. Id. ¶ 38. On July 28, 2022, Defendants told Plaintiff that they intended to terminate Plaintiff's employment on July 31, 2022 (a month before the parties' agreed-upon date). Id. ¶ 39.

Plaintiff further alleges that on July 28, 2022, Defendants offered Plaintiff a "Termination Package" in exchange for payment. Id.[2] The Termination Package retroactively reduced Plaintiff's salary for July and August 2022, made no mention of Plaintiff's $100,000 bonus or Plaintiff's unused vacation time, and required Plaintiff to sign a Termination Agreement before receiving any payment. Id. ¶ 45; see Termination Agreement [Doc. No. 28-3]. Plaintiff refused to agree to the Termination Package. Id. ¶ 53. Defendants then paid Plaintiff's full salary of $22,500 for the month of July. Id. Defendants also offered to raise Plaintiff's payment further, in exchange for Plaintiff's signature on a slightly revised Termination Agreement. Id. ¶ 54. To date, Plaintiff has not signed the Termination Agreement, and Defendants have refused to pay any monies owed to Plaintiff without Plaintiff's signature on the Termination Agreement. Id. ¶¶ 56, 59.

Plaintiff alleges that Defendants owe Plaintiff his full salary of $22,500 for August 2022; his annual bonus of $100,000; $16,000 for unused vacation days; and over $450,000 of unreimbursed employment-related expenses. Id. ¶¶ 55, 58.

## II.   Motion to Strike

Federal Rule of Civil Procedure 12(f) permits the court to strike "any redundant, immaterial, impertinent, or scandalous material," Fed. R. Civ. P. 12(f), but "[a] court has considerable discretion" in deciding to do so. Alvarado-Morales v. Digital Equipment Corp., 843 F.2d 613 (1st Cir. 1988). Motions to strike "are disfavored in practice, and not calculated readily to invoke the court's discretion . . . because 'striking a portion of a pleading is a drastic remedy and . . . and it is often sought by the movant simply as a dilatory or harassing tactic.'" Manning

---

[2] The Motion to Strike [Doc. No. 31] seeks to strike the allegations and exhibit related to this Termination Package.

v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013)) (citing 5C Wright & Miller, Federal Practice & Procedure § 1380 (3d ed. 2011)). Rule 12(f) "is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint[.]" Bryan Corp. v. ChemWerth, Inc., 911 F. Supp. 2d 103, 105 (D. Mass. 2012) (quoting 5C Wright & Miller, Federal Practice and Procedure § 1380, at 391 (3d ed. 2011)).

Defendants argue that the Termination Agreement and any statements describing the contents of—and the negotiations surrounding—the Termination Agreement should be struck from the record because they would be inadmissible at trial under Rule 408 of the Federal Rules of Evidence. Rule 408 states that evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise" a "disputed claim" is not admissible to "prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408.

Because Rule 408 "is designed to encourage settlement negotiations *after* a controversy has actually arisen," Hiram Ricker & Sons v. Students Int'l Meditation Soc., 501 F.2d 550, 553 (1st Cir. 1974) (emphasis added), its applicability depends on "the timing of an offer and the existence of a disputed claim," Moreta v. First Transit of PR, Inc., 39 F. Supp. 3d 169 (D.P.R. 2014) (quoting Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827 (2d Cir. 1992)). A claim is "in dispute" when there is "an actual dispute or difference of opinion regarding a party's liability for or the amount of the claim at issue." Weems v. Tyson Foods, Inc., 665 F.3d 958, 965 (8th Cir. 2011). There is no need for a dispute to "crystallize to the point of threatened litigation." Affiliated Mfrs. v. Aluminum Co. of Am., 56 F.3d 521, 527 (3d Cir. 1995). Here, Defendants have made no showing that the proposed Termination Agreement and the facts relating to that initial offer would be barred by Rule 408 where the agreement was offered contemporaneous to Plaintiff's termination, on July 28, 2022. See Am. Compl. ¶ 35 [Doc. No. 28].

Rule 408 may ultimately serve to bar introduction of negotiations between Plaintiff and Defendants that occurred after July 28, 2022. Specifically, in Paragraphs 53–54 of the Amended Complaint [Doc. No. 28], Plaintiff alleges that Defendants "conceded to pay [his] full salary of $22,500 for the month of July 2022 . . . and offered to raise the amount of payment that [he] would receive." At this point, Plaintiff had been informed of his early termination and refused to sign the Termination Agreement, which clearly shows an "actual controversy" had arisen between the parties regarding the amount the Defendants owed Plaintiff. Hiram Ricker, 974 F.3d at 554. Moreover, Plaintiff frames this compromise as the Defendants' concession that they did in fact owe additional wages to Plaintiff, which is exactly what Rule 408 is meant to bar. See Advisory Committee Notes to Fed. R. Evid. 408 (explaining that compromise offers may be motivated by a desire for peace rather than concession of weakness of position, and Rule 408 is designed to encourage settlement of disputes). At the same time, portions of these Paragraphs— such as Defendants' alleged refusal to pay amounts that Plaintiff claims were due under his contract unless he signed the proposed agreement—may well be admissible as part of the wrongful conduct, rather than the settlement negotiations.

The court need not resolve this dispute to determine the Partial Motion to Dismiss [Doc. No. 31]. The relevant standard governing Defendants' Motion to Strike [Doc. No. 31] is Federal Rule of Civil Procedure 12(f), *not* Federal Rule of Evidence 408. The Defendants have not demonstrated that the proposed Termination Agreement [Doc. No. 28-3] or the allegations in the Amended Complaint [Doc. No. 28] are immaterial, and they have made no suggestion that the allegations are "redundant, . . . impertinent, or scandalous." Accordingly, the Motion to Strike [Doc. No. 31] is DENIED.

### III.      Motion to Dismiss

####      A.      *Standard of Review*

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

####      B.      *Count II: Massachusetts Wage Act Claims*

To state an actionable claim under the Massachusetts Wage Act, a plaintiff must allege that (1) he was an employee under the statute, (2) his form of compensation constitutes a wage under the statute, and (3) the defendants did not pay his wages in a timely manner. Klauber v. VMware, Inc., 599 F. Supp. 3d 34, 46 (D. Mass. 2022), aff'd, 80 F.4th 1 (1st Cir. 2023) (citing Mass. Gen. Laws ch. 149, § 148); Ellicott v. Am. Capital Energy, Inc., 906 F.3d 164, 169 (1st Cir. 2018). For compensation to be considered "wages" owed under the Wage Act, such compensation must be earned, meaning that an individual must "complete[] the labor, service, or performance required of him" in exchange for the claimed wages. See Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 125 n.6 (2014) (internal citations omitted); M.G.L. c. 149, § 148. Defendants assert that the Plaintiff cannot recover under the Wage Act his August salary, bonus,

unused vacation days, and unreimbursed employee expenses. See Mem. ISO Mot. to Dismiss 8–13 [Doc. No. 31]. The court addresses Defendants' arguments as they relate to each category of compensation in turn.

1.      Salary for August 2022

Plaintiff argues that he is owed wages for August 2022 because he had completed in July all the work that Defendants required him to complete by August 31, 2022. Defendants argue that Plaintiff cannot recover wages for August 2022 because he "did not perform work for or with Proxet" during the month of August. Mem. ISO Mot. to Dismiss 9 [Doc. No. 31]. Plaintiff states that he worked with Proxet through July 28, 2022—and does not allege that he worked in August 2022. Am. Compl. ¶ 38. Therefore, Plaintiff has not sufficiently alleged that he was an employee under the Wage Act in August 2022 and he fails to satisfy the first element of a Wage Act claim for his August 2022 salary. See VMware (stating that Wage Act plaintiff must allege that "(1) he was an employee under the statute").

This court acknowledges Plaintiff's argument that he and Defendants had agreed he would be paid in exchange for "postponing his resignation from March 2022 until August 31, 2022 and staying on at Proxet to provide a smooth transition between himself and his replacement." Am. Compl. ¶ 62 [Doc. No. 28]. But any right Plaintiff thus accrued to a salary in August 2022 is "based on contract." Huebsch v. Katahdin Indus., Inc., 2001 WL 716884 (Mass. Super. Apr. 24, 2001) (dismissing plaintiff employee's Wage Act claim for wages for the second year of a contract where defendant employer terminated plaintiff in the first year and plaintiff did not do any work for defendant in the second year).

2.      Bonus

Plaintiff has sufficiently alleged a claim for payment of a $100,000 non-discretionary bonus for 2022 under the Wage Act. Bonuses must be non-discretionary to be recoverable under the Wage Act. Boesel v. Swaptree, Inc., No. CIV.A. 2011-04537-H, 2013 WL 7083258, at *4 (Mass. Super. Dec. 23, 2013). Massachusetts courts also consider extrinsic evidence of alleged subsequent oral modifications of a contract, even if the contract contains a provision stating that the contract may only be amended in writing. Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 439 (1992).

Plaintiff alleges that the parties orally agreed to a non-discretionary bonus of $50,000 around 2016–17 and a non-discretionary bonus of $100,000 in 2021, and that Defendants conformed to the first agreement by consistently paying Plaintiff his bonus between 2017 and 2021. Am. Compl. ¶¶ 12–13, 30 [Doc. No. 28]. While Defendants characterize Plaintiff's allegations as conclusory, Mem. ISO Mot. to Dismiss 10 [Doc. No. 31], Plaintiff's identification of specific time periods of the alleged oral agreements, along with a conforming pattern of payment, is sufficient to allege a plausible claim that the parties did orally agree to a non-discretionary bonus.

3.      Payment for Unused Vacation Days

Plaintiff has sufficiently alleged a claim for payment of unused vacation days under the Wage Act. Payment for unused vacation days can be considered "wages" under the Act if provided for under the terms of "an oral or written agreement." Elec. Data Sys. Corp. v. Off. of Atty. Gen., No. CIV. A. 01-0211A, 2002 WL 415554, at *3 (Mass. Super. Feb. 25, 2002) (quoting M.G.L. c. 149, § 148). Evidence of subsequent oral modifications of an agreement is permitted regardless of any provision in the original agreement forbidding subsequent

modifications. <u>Cambridgeport Sav. Bank</u>, 413 Mass. at 439. This evidence can be "inferred from the conduct of the parties and from the attendant circumstances of the case." <u>Bachorz v. Miller-Forslund</u>, 703 F.3d 27, 33–34 (1st Cir. 2012) (finding that the parties had orally revised their lease agreement such that the defendant would waive a subtenant provision in exchange for the plaintiff accepting responsibility for a leaky roof, in part because the plaintiff replaced the leaky roof at their own expense after their oral agreement allegedly took place).

Plaintiff alleges that the parties agreed to orally modify their employment agreement to include payment of unused vacation days. Am. Compl. ¶¶ 14 [Doc. No. 28]. He alleges that Defendants regularly compensated him for unused vacation days and documented his accrued vacation time. <u>Id.</u> ¶¶ 14, 21. He claims to be owed 15 days of vacation time valued at $16,000. <u>Id.</u> ¶ 22. Under the Wage Act, "a terminated employee is entitled to all accrued vacation benefits on the day of discharge." <u>Reuter v. City of Methuen</u>, 489 Mass. 465, 468, 184 N.E.3d 772 (2022). Assuming the truth of these factual allegations and drawing reasonable inferences in Plaintiff's favor, the <u>Amended Complaint</u> [Doc. No. 28] sufficiently alleges a claim of wages owed for unused vacation under the terms of an oral employment agreement.

### 4.    Reimbursement of Employee Expenses

Plaintiff has also sufficiently alleged a claim for unreimbursed employee expenses under the Wage Act. Requiring employees to front employee expenses, including travel expenses, can constitute wage reductions under the Wage Act. <u>See</u> <u>Furtado v. Republic Parking Sys., LLC</u>, 2020 WL 996849, at *4–5 (D. Mass. Mar. 2, 2020). This is because the Wage Act bars wage reduction "by any other means," and a company requiring the plaintiff to "travel many miles using his own vehicle while working on behalf of [the company] reduces his wages "just as

effectively as if the employer had . . . deducted funds from [his] wages." Id. at *4–5 (internal citations omitted).

Defendants argue that Plaintiff does not have sufficient factual support for his alleged $450,000 recovery. See Mem. ISO Mot. to Dismiss 13–14 [Doc. No. 31]. However, Plaintiff alleges that he spent most of his employment abroad in three different countries, Defendants failed to reimburse him for employee expenses, and he bought plane tickets in reliance on the parties' agreement that he would work until August 31, 2022. See Am. Compl. ¶¶ 19, 37, 73–74 [Doc. No. 28]. This is enough to allege a plausible claim that Plaintiff incurred travel expenses as part of his work for Defendants, and that Defendants failed to pay them. More specific facts that justify a $450,000 recovery, rather than a smaller amount, can be developed through discovery.

5.   Defendants' Motion to Dismiss [Doc. No. 31] the Amended Complaint [Doc. No. 28] as to Medvedovsky

Plaintiff has sufficiently alleged that Medvedovsky is a liable officer under the Wage Act. An officer of a company is liable for Wage Act violations if the officer "controlled, directed, or participated to a substantial degree in formulating and determining the financial policy of [the company], or . . . accepted significant management responsibilities similar to those performed by a president or treasurer, regarding the control of finances or payment of wages." Ferrara v. Voyport II, LLC, 2018 WL 5555066, at *5 (D. Mass. Oct. 29, 2018).

Plaintiff alleged that Medvedovsky is the founder, president, and Chief Executive Officer of Proxet, and is responsible for paying Proxet's employees and workers. Am. Compl. ¶¶ 9, 69 [Doc. No. 28]. Plaintiff also alleged that Medvedovsky directed and controlled Plaintiff's job duties and gave several examples of specific duties, such as new client onboarding. Id. ¶¶ 23–24. Plaintiff has plausibly alleged that Medvedovsky is the plaintiff's employer under the Wage Act. Whether Medvedovsky actually has these responsibilities is a factual dispute best left for a later

stage of litigation. See, e.g., Ferrara, 2018 WL 5555066 at *5–6 (evaluating the abilities of the

defendant, a CFO, to make financial decisions for his company, on a motion for summary

judgment). Therefore, this court allows the Wage Act claim against Medvedovsky to proceed.

        C.     *Count III: Breach of Implied Covenant of Good Faith and Fair Dealing*

        Plaintiff has sufficiently alleged a claim for breach of the implied covenant of good faith

and fair dealing as to Proxet.[3] "Under Massachusetts law, a covenant of good faith and fair

dealing is implied in every contract." Robert Reiser & Company v. Scriven, 130 F. Supp. 3d 488,

495 (D. Mass 2015) (citing UNO Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass.

376, 385 (2004)); Anthony's Pier Four, Inc. v. HBS Assocs., 411 Mass. 451, 473 (1991). The

covenant provides that "neither party shall do anything that will have the effect of destroying or

injuring the rights of the other party to receive the fruits of the contract." Anthony's Pier Four,

411 Mass. at 471–72; Fortune v. National Cash Register Co., 373 Mass. 96, 105 (1977) (stating

that the doctrine exists to "prevent overreaching by employers and the forfeiture by employees of

benefits almost earned by the rendering of substantial services."). Good faith and fair dealing

claims may be dismissed if the plaintiff has presented no evidence that the employer had

"deprived him of any income he reasonably earned or to which he was entitled." Lelio v. Marsh

USA, Inc., 2017 WL 3494214, at *10–11 (D. Mass. Aug. 14, 2017).

---

[3] The Amended Complaint [Doc. No. 28] does not identify this cause of action with a caption or
other subheading. See Am. Compl. 12–13 [Doc. No. 28]. However, Defendants point out that
Plaintiff's original complaint, which identified the third claim with a caption, brought this claim
only against Proxet. See Mem. ISO Mot. to Dismiss 1, 2 [Doc. No. 32] (citing Complaint [Doc.
No. 1]). Plaintiff does not dispute in his Response [Doc. No. 35] that the claim is only against
Proxet. See Resp. 17–18 [Doc. No. 35]. In any event, a claim for breach of the implied covenant
of good faith and fair dealing is tied to contract, cf. Robert Reiser & Company v. Scriven, 130 F.
Supp. 3d 488, 495 (D. Mass 2015), and the contract here was between Plaintiff and Proxet, not
Medvedovsky. See Am. Compl. ¶ 78–81 [Doc. No. 28].

Defendants argue that Plaintiff "relies on the single, threadbare allegation that 'Proxet breached the implied covenant of good faith and fair dealing.'" Mem. ISO Mot. to Dismiss 17 [Doc. No. 31] (citing Am. Compl. ¶ 80 [Doc. No. 28]). The court disagrees. Plaintiff has alleged that he was entitled by contract to work through August 31, 2022; that Defendants led him to believe he would be paid through that date; that Proxet terminated him on July 28, 2022, and has failed to pay him the promised wages. Am. Compl. ¶¶ 14, 35, 44 [Doc. No. 28]. Plaintiff alleged further that Defendants conditioned payment of some wages on the signing of a Termination Agreement. See id. ¶¶ 45–47, 55-57. The Amended Complaint [Doc. No. 28] sufficiently alleges a claim that Proxet took actions "injuring the rights of [Plaintiff] to receive the fruits of [his] contract." Anthony's Pier Four, 411 Mass. at 471–42.

## IV.    Conclusion

For the foregoing reasons, the Partial Motion to Dismiss [Doc. No. 31] is GRANTED with respect to Plaintiff's Wage Act claim for his August 2022 salary and DENIED as to all other claims in the Amended Complaint [Doc. No. 28], and the Motion to Strike [Doc. No. 31] is DENIED. The court also GRANTS Defendants' request, see Mem. ISO Mot. to Dismiss 18 [Doc. No. 32], for an extension of time to file an answer. Defendants shall file an answer no later than twenty-one (21) days from the entry of this order.

IT IS SO ORDERED.

March 29, 2024                                    /s/ Indira Talwani
                                                 United States District Judge